**Patricia BALANDRAN, Appellant,**

v.

**FURR'S, INC., d/b/a Save 'N Gain, Appellee.**

**No. 08–91–00421–CV.**

Court of Appeals of Texas, El Paso.

June 24, 1992.

Jose E. Troche, El Paso, for appellant.

Mark C. Walker, Steven L. Hughes, Mounce & Galatzan, El Paso, for appellee.

Before OSBORN, C.J., and BARAJAS and LARSEN, JJ.

## OPINION

OSBORN, Chief Justice.

This appeal is from a judgment based upon a jury verdict which found $2,300 for past medical care but awarded nothing for past physical pain and mental anguish. The Appellant contends the failure to award any amount for past physical pain and mental anguish is against the great weight and preponderance of the evidence. We affirm.

### Facts

The Appellant testified that she slipped and fell in the Appellee's store where she was shopping when she stepped in a puddle of water on the floor. She said she fell on her knee and elbow and that she had pain "in the knee and a little bit on the elbow". The accident happened on September 10, 1987, and she was seen four days later by Dr. Mario Palafox. She testified that the injury to her knee has restricted her activities, that she cannot carry heavy items, that she cannot clean house and cannot participate in sports activities. She said at

the time of trial in August 1991, that she had to wear an elastic brace on her knee. Although she testified Dr. Palafox prescribed Tylenol, she never testified to a single instance when she took any pain medication. Although her husband testified as to the restrictions in her activities since the fall and swelling of the knee on occasions, he never testified about a single instance in which his wife suffered pain as a result of her injury. Ms. Balandran testified as to pain at the time of the fall and she said a cortisone shot was painful. With regard to her inability to do the things she used to do, she said "[t]he pain, it's there." Ms. Balandran's mother who was with her daughter at the time of the accident, testified that at the time she fell, her daughter said her leg hurt. She did not testify to a single other incident in which her daughter had told her of any pain as a result of the fall.

Ms. Balandran testified that she gave testimony in 1989 that she had never suffered any injuries before this fall and that she was never involved in any accidents. She then admitted that she had injured her right wrist in 1976, and received treatment from Dr. Palafox and that in 1986, she slipped while showering and injured her lower back and right hip.

The treating physician, Dr. Palafox, said Ms. Balandran injured three primary parts of the knee "the medial meniscus, the undersurface of the patella, and the posterior cruciate ligament." Although he testified that "[s]he is doing satisfactorily now", he said in the future "she will have to have some type of surgery or investigation inside the knee to see what can be repaired." He said his findings were based in part on the MRI (Magnetic Resonance Imaging) report and that the MRI reflects objective findings of her injury. He said at the time of his initial examination, there was only slight swelling. When he saw her on September 23, "she said that she didn't have any severe pain and her right knee ached slightly." At the time of his examination on October 12, 1987, "she was having occasional slight pain and soreness of the right knee and right ankle." He also testified

that "[i]njured people always exaggerate their complaints."

Dr. James Boone, an orthopedic surgeon who did an examination to testify for the store, said at the time he saw Mrs. Balandran in February 1990, her only complaints were about her knee. Upon examination, he found she had full range of motion, no atrophy, no swelling and his evaluation of the MRI was that there were no abnormalities of the knee. He said she was complaining of pain in her knee on that occasion.

### Jury Verdict

The jury in answer to the court's questions found both the store and Ms. Balandran were negligent and attributed 50 percent to each party. They found the amount of past medical care to be $2,300 and future medical care to be $10,000. The jury answered "0" for past and future loss of earning capacity and the same for past and future physical impairment and past and future physical pain and mental anguish.

### Points of Error

By two points of error, the Appellant contends the jury's answer as to damages for past pain and mental anguish is against the great weight and preponderance of the evidence.

### Standard of Review

A factual insufficiency point of error requires that the appellate court examine all evidence without any inferences in favor of the verdict. The evidence supporting the verdict is to be weighed along with the other evidence in the case, including that which is contrary to the verdict. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951). The verdict may be set aside "only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986). The court may reverse and remand where a nonfinding is against the great weight and preponderance of the evidence. *Cropper v. Caterpillar Tractor Company*, 754 S.W.2d

646 (Tex.1988). In making that determination, the court must set forth in detail all relevant evidence along with its reasons for the conclusion it reaches. *Pool v. Ford Motor Company,* 715 S.W.2d 629 (Tex. 1986).

▆ We recognize that in considering great weight points complaining of a jury's failure to find a fact, courts of appeals must be mindful that a jury was not convinced by a preponderance of the evidence to make some affirmative finding. *Herbert v. Herbert,* 754 S.W.2d 141 (Tex.1988). We are not entitled to reverse merely because we conclude that the evidence preponderates toward an affirmative answer. *Id.*

### Case Law

There is no "bright line test" by which the courts of this state have determined to affirm or reverse jury verdicts which fail to make affirmative findings of some elements of physical pain and mental anguish. In *Dupree v. Blackmon,* 481 S.W.2d 216 (Tex.Civ.App.—Beaumont 1972, writ ref'd n.r.e.), the Court reversed a case in which a jury answered "none" to a damage issue where the plaintiff claimed a knee injury as the result of a collision between an automobile and a motorbike. Several stitches were required to close a cut in his knee. Justice Keith, in a concurring opinion, noted the distinction as to whether the complaints involved were objective or subjective. He also noted that the testimony of the plaintiff was clear and direct and that there were no circumstances tending to impeach his testimony. Further, he said that if the opinions expressed by experts do not comport with the juror's ideas of sound logic, they have a right to say so.

This Court in *Comstock v. Ramirez,* 520 S.W.2d 475 (Tex.Civ.App.—El Paso 1975, no writ), affirmed a case where the jury awarded a sum for past medical expense but answered "none" as to past physical pain and mental anguish as well as for future pain and anguish. In that case, the medical evidence did not reflect any injury.

In *Blizzard v. Nationwide Mutual Fire Insurance Company,* 756 S.W.2d 801 (Tex. App.—Dallas 1988, no writ), Justice Hecht noted some of the cases that seem to have different results on the same issue now before us. In that case, as in the case at bar, the jury also made a finding of an amount of damages for past medical expenses only. The claimant testified that since the accident, she had not had a single day free of pain which caused her to miss work occasionally. Her doctor testified that her complaints of pain were consistent with his tests and findings. In upholding the jury verdict, the Court noted that Ms. Blizzard "obtained only occasional medical attention, no hospitalization or surgery, and almost no medication." *Id.* at 805.

More recently, this Court in *Sibert v. Enriquez,* 774 S.W.2d 812 (Tex.App.—El Paso 1989, writ denied) again considered a case where a jury awarded an amount for past medical expense but nothing for past physical pain and mental anguish. That opinion notes that the matter of pain and suffering are peculiarly within the province of the jury and that the mere fact of injury does not prove compensable pain and suffering. In that case, there were no objective signs of an injury to the claimant's knee. There was no swelling, no tenderness to the touch and no lacerations or abrasions.

In *Sansom v. Pizza Hut of East Texas, Inc.,* 617 S.W.2d 288 (Tex.Civ.App.—Tyler 1981, no writ), the Appellant injured her ankle when she stepped into a hole in a parking lot, causing her to fall. The jury found the amount due for past medical expenses was $2,000 but nothing for past physical pain and mental anguish. The Court held there was nothing in the record to controvert the fact that the appellant did suffer some injury and did suffer some past pain and mental anguish. The jury's answer of zero damages for pain and suffering in the past was found to be against the great weight and preponderance of the evidence and manifestly unjust. The case was remanded for a new trial.

More recently, in *Hammett v. Zimmerman,* 804 S.W.2d 663 (Tex.App.—Fort Worth 1991, no writ), the jury found that Nan Hammett and Sherry Hammett sus-

**652**

tained injuries as the result of a vehicle accident and that the injuries required medical care. The jury gave no award for physical pain and mental anguish. Having determined that there was objective evidence of an injury by Nan Hammett, the Court reversed and remanded for a new trial, but having determined that there were no objective findings of an injury by Sherry Hammett, the judgment as to her was affirmed.

Perhaps these cases and the ones cited in those opinions tell us that different courts, like different juries, reach different results in considering very similar fact situations. All of the courts recognize that the jury must pass upon the credibility of the witnesses and determine the weight to give their testimony. *Leyva v. Pacheco*, 163 Tex. 638, 358 S.W.2d 547 (1962). If the test is objective findings versus subjective findings, does this mean a jury cannot disbelieve and reject the testimony of a doctor who says he makes objective findings? Or if the issue turns on whether the claimant's testimony is clear and direct versus testimony of a party that is impeached, does this mean that a jury may not reject the testimony of an interested witness even when unimpeached? In both instances, the answer should be "no". As the Court stated in *Yanez v. Branch & L.S.T. Sales*, 725 S.W.2d 343 (Tex.App.—Corpus Christi 1987, no writ), "[i]t is not necessary for one side to negate by affirmative evidence the evidence presented by the other side, and the jury may simply disbelieve such evidence." *Id.* at 344.

In this case, one doctor made objective findings from the magnetic resonance imaging. The other doctor found no abnormalities in his evaluation of the MRI. The injured party had complaints of pain but two people very close to her, her husband and her mother, never mention her complaints of pain other than when she fell. The record does not reflect she ever took any medication for pain in the nearly four years between the accident and the trial.

*Conclusion*

We recognize that in this case, there was evidence of objective findings of injury by the treating physician. But, that evidence was contradicted by the examining physician. There was some evidence to impeach the plaintiff as to other accidents and injuries. The testimony from the plaintiff, her husband and her mother as to her physical pain and mental anguish is at best minimal. It is not so strong as to cause us to hold that the verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust. Points of Error Nos. One and Two are overruled.

The judgment of the trial court is affirmed.